**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

LUIS F. CRUZ-ACEVEDO, et al.,

   **Plaintiffs,**

           **v.**                 **CIVIL NO.** 07-1844 (FAB)

PEDRO TOLEDO-DAVILA, et al.,

   **Defendants.**

**OPINION AND ORDER**

BESOSA, District Judge.

On October 7, 2008, plaintiffs Luis F. Cruz-Acevedo and his daughter, Manuela V. Cruz-Perocier, filed an Amended Complaint pursuant to 42 U.S.C. § 1983 against the following members of the Puerto Rico Police Department in their personal and official capacities: Police Superintendent Pedro Toledo-Davila; Commander or Director of the Drug Division of the Police of Puerto Rico, William Orozco-Sanchez; Sergeant Luis E. Ruperto-Torres; Area Commander of the Drug and Vice Bureau in the Mayagüez Region, Lieutenant Dennis Muñiz-Tirado; Commander of the Mayagüez Region, Francisco Carbo-Marty; police officer Victor Cortes-Caban; and unknown police officers of the Puerto Rico Police Department John Doe, Richard Roe, and Peter Moe. (Docket No. 75)

In their Amended Complaint plaintiffs seek redress pursuant to the Civil Rights Act, 42 U.S.C. § 1983, for the alleged violation of their constitutional rights under the First, Fourth, Ninth, and Fourteenth Amendments to the United States Constitution.

Supplemental jurisdiction for causes of action pursuant to Puerto Rico laws are premised on the same alleged actions.

On June 30, 2009 defendants Toledo-Davila, Orozco-Sanchez, and Carbo-Marty filed a Motion for Summary Judgment. (Docket No. 90.) Plaintiffs opposed the motion. (Docket No. 97.) Plaintiffs also moved to enter default as to defendants Cortes-Caban, Ruperto-Torres, and Muniz-Tirado which this Court referred to the Chief Deputy Clerk on August 4, 2009. The Clerk entered default as to Cortes-Caban, Ruperto-Torres and Muniz-Tirado on the same day (Docket Nos. 99 and 101).

For the reasons stated below, defendants' motion for summary judgment is **GRANTED**.

## I.   Procedural Synopsis

The pending claims stem from an incident that occurred on September 13, 2006. The Amended Complaint avers that members of the Puerto Rico Police Department entered plaintiff Cruz-Acevedo's home with a warrant issued upon the false statements of defendant police officer Cortes-Caban, and that two other defendant police officers, Muniz-Tirado and Ruperto-Torres, knew that Cortes-Caban's statement was false when they participated in the warrant's execution and the resulting search of plaintiff's home. Plaintiffs also allege that the police officers used excessive force[1] during

---

[1] The Amended Complaint asserts that the officers forcibly entered plaintiff Cruz-Acevedo's home, breaking the main door and security gate, "bearing long weapons," "threatening" Cruz-Acevedo,

their search, resulting in property damage to Cruz-Acevedo's home. In sum, the plaintiffs assert that the defendants' actions were not isolated, but part of a pattern of unconstitutional conduct involving the fabrication of cases against innocent citizens.

The clerk has entered default as to the officers involved in the search proceedings themselves, defendants Cortes-Caban, Ruperto-Torres, and Muniz-Tirado (Docket 101). This Court already dismissed all section 1983 claims brought by plaintiff Manuela Cruz-Perocier (Cruz-Acevedo's daughter) for lack of standing.[2] In their opposition to the summary judgment motion, the plaintiffs waive the First and Ninth Amendment claims contained in their Amended Complaint (Docket No. 2 at 5-6). Plaintiff also notify the Court that they "agree with movants" that "the injunctive relief sought at [sic] the captioned complaint has turned moot" because the three officers (Cortes-Caban, Ruperto-Torres, and Muniz-Tirado) no longer work at the Puerto Rico Police Department (Docket No. 97 at 2). Finally, plaintiffs concede that supervisory defendant and movant William Orozco-Sanchez was "not a supervisor at the relevant

_____

and pushing Cruz-Acevedo violently against the wall. The Court includes the assertions made in the amended complaint only to serve as a context for the case's procedural history. The Court does not, and cannot, rely on these facts in its resolution of the motion for summary judgment because the plaintiff's counsel fails to support these facts, or even to assert them, in his statement of facts or additional statement of facts related to his opposition to the summary judgment motion.

[2] See the Court's Opinion and Order of September 25, 2008 (Docket No. 72 at 10).

time of [the] illegal search and seizure on September 13, 2006."
(Docket No. 97 at 3.) All claims against Orozco-Sanchez are treated
as voluntarily **DISMISSED,** with prejudice.

Following these voluntary waivers of the First and Ninth
Amendment claims and because the plaintiffs' request for injunctive
relief is now moot, only the plaintiffs' Fourth and Fourteenth
Amendment claims pursuant to section 1983 remain as to two of the
three supervisory defendants who are also the movants of the
pending summary judgment motion: Toledo-Davila and Carbo-Marty.

## II.  Local Civil Rule 56

Local Rule 56 requires parties to support a motion for summary
judgment with a statement of material facts as to which the moving
party contends there is no genuine issue of material fact to be
tried.  L.CIV.R. 56(b). It also requires a party opposing summary
judgment to submit an opposing statement of facts that either
admits, denies, or qualifies the movant's proposed facts, and it
allows that party to submit its own statement of additional
proposed facts.  L.CIV.R. 56(c).  Both rules require the parties to
submit "separate, short and concise" statements of fact in numbered
paragraphs that are supported by pin cites to admissible evidence.
L.CIV.R. 56(b), (c) & (e).  As a general principle, parties may not
include legal arguments or conclusions in their statement of facts.
See <u>MVM Inc. v. Rodriguez</u>, 568 F.Supp.2d 158, 163 (D.P.R. 2008);

Juarbe-Velez v. Soto-Santiago, 558 F.Supp.2d 187, 192 (D.P.R. 2008).

Although the plaintiffs facially complied with the requirements of Local Civil Rule 56 in their Opposition to the Motion for Summary Judgment, the Court nevertheless notes with disapproval the superficiality of plaintiffs' opposition. The plaintiffs' Opposition consists of five pages. Of these five pages, only two are devoted to a legal analysis applying the facts of this case to relevant law. The defendants' Motion for Summary Judgment is twenty-four pages long, with over twenty pages devoted to legal analysis. Though quantity does not equal quality, this Court fails to understand how plaintiffs' counsel could justify such a skeletal, cursory response to a potentially case-ending motion.

The Statement of Facts attached to plaintiffs' Opposition (less than two pages total) admits to the Statement of Facts submitted by the movants, essentially conceding each of those facts for purposes of the record.[3] (Docket No. 97-2.) Plaintiffs' counsel submits only two "additional facts" for this Court's consideration. One of these facts is supported by an exhibit in the Spanish language which the Court granted plaintiffs' counsel time to translate, yet which counsel failed to translate and

---

[3] Though the facts submitted by movants are uncontested, the Court examines the movants' motion in accordance with the below stated summary judgment standard, including an evaluation of materials attached in support of each submitted fact. See Torres-Rosario v. Rotger-Sabat, 335 F.3d 1, 8-9 (1st Cir. 2003).

submit.  As such, the Court treats the submitted additional fact as
unsupported and will not consider it.

     The second and only other "additional fact" plaintiffs counsel
submits arises in a strange form: plaintiffs counsel notifies the
Court that it "may take judicial notice that defendant Dennis
Muniz-Tirado was found guilty for the fabrication of criminal cases
along with defendants Victor Cortes-Carbo and Luis Ruperto-Torres"
in a criminal case tried in this District in 2008 (Docket No. 97-2
at 2).[4]  Federal Rule of Evidence 201(a) governs judicial notice of
adjudicative facts.  A Court may take judicial notice, whether
requested or not, and shall take judicial notice if requested by a
party and supplied with necessary information.  Fed.R.Evid. 201(c)

---

[4]     Upon closer inspection of the criminal case to which
plaintiffs' counsel refers, the Court finds that plaintiffs counsel
inaccurately describes the specific outcomes of the case related to
the three cited defendants.  Defendants Dennis Muniz-Tirado, Victor
Cortes-Caban, and Luis Ruperto-Torres were indicted, along with a
number of other police officers in the Puerto Rico Police
Department Mayaguez Drug/Narcotics/Vice Unit, for Conspiracy
Against Rights of Citizen and for Conspiracy to Distribute
Narcotics.  (See Criminal Case 07-346, Docket No. 3 at 2.)  The
conspiracy against rights of citizens count alleged that (1) the
indicted officers planted illegal controlled substances on or near
persons in Puerto Rico, and (2) the indicted officers swore out
false search warrant affidavits against persons in Puerto Rico
before the Commonwealth's judges, both resulting in unreasonable
seizures and unlawful detentions and arrests of those persons.
Defendant Dennis Muniz-Tirado pled guilty to Conspiracy Against the
Rights of Citizens and to Conspiracy to Distribute Narcotics.
(Crim. No. 07-346, Docket No. 261) Defendant Victor Cortes-Caban
was found guilty by a jury of Conspiracy Against the Rights of
Citizen and Conspiracy to Distribute Narcotics (Crim. 07-346,
Docket No. 424.)  Defendant Luis Ruperto-Torres was found guilty by
a jury of Conspiracy Against the Rights of Citizens (Crim. No. 07-
346, Docket No. 425.)

and (d).  Here, plaintiffs have casually informed the Court in
their Statement of Additional Facts pursuant to Local Civil Rule 56
that the Court "may" take judicial notice of a fact.[5]  Because
plaintiffs do not request the Court to take judicial notice in the
form of a motion or even pursuant to the proper rule,[6] the Court

---

[5] A judicially noticed fact is one "not subject to reasonable
dispute" because it is either "generally known within the
territorial jurisdiction of the trial court" or it is "capable of
accurate and ready determination by resort to sources whose
accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b).
"Because the effect of judicial notice is to deprive a party of the
opportunity to use rebuttal evidence, cross-examination, and
argument to attack contrary evidence, caution must be used in
determining that a fact is beyond controversy under Rule 201(b)."
Int'l Star Class Yacht Racing Assoc. v. Tommy Hilfiger U.S.A.,
Inc., 146 F.3d 66, 70 (2d Cir. 1998)(citations omitted).

[6] The Second and Eleventh Circuits appear to have laid down
an absolute rule that a court may not take judicial notice of any
adjudicative fact in a court record for the truth of the matter
asserted. See Int'l Star Class Yacht Racing Ass'n, 146 F.3d at
70-71; United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994).
The Seventh Circuit stakes out a slightly different position; it
notes that "courts generally cannot take notice of findings of
facts from other proceedings for the truth asserted therein" but
adds that "it is conceivable that a finding of fact may satisfy the
indisputability requirement of Fed.R.Evid. 201(b)." G.E. Capital
Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1082 n. 6 (7th Cir.
1997). The Fifth Circuit has not decided whether a court may take
notice of the factual findings of another court on rare occasions
subject to Rule 201's indisputability requirement. Taylor v.
Charter Med. Corp., 162 F.3d 827, 830 (5th Cir. 1998). While the
First Circuit has not engaged in a detailed discussion of this
issue, it appears to have adopted the Second Circuit's position.
See Nadherny v. Roseland Prop. Co., 390 F.3d 44, 51-52 (1st Cir.
2004) ( citing Int'l Star Class Yacht Racing Ass'n, 146 F.3d at
70-71). Regardless, this discussion is academic to this case
because plaintiffs request judicial notice of a guilty verdict, not
findings of fact.

instead treats the plaintiffs' citation of a criminal matter in which three defendants in the instant case were found guilty of or pled to Conspiracy Against the Rights of Citizens, meaning that they were found guilty of planting or fabricating evidence or falsifying warrant affidavits, as an alleged additional fact for which the criminal case cited itself acts as a supporting exhibit.[7]

All in all, then, the facts of this case consist only of the facts submitted by the defendants, admitted by the plaintiffs, and the one fact submitted by the plaintiffs. Plaintiffs' counsel submitted none of the facts alleged in the complaint that explain the context in which the claims arose. For example, plaintiffs have submitted no facts related to the incident itself: where plaintiff Cruz-Acevedo was located when police allegedly entered his home, the manner in which they entered his home, or the actions taken during the search of his home. There are no facts submitted regarding the allegedly illegal execution of the search warrant. No facts have been introduced related to the allegedly false statement given in support of that warrant. The plaintiffs submit absolutely no facts that assist the Court in telling the plaintiffs' story for the purposes of reaching resolution on the pending motion.

---

[7] Furthermore the Court will only consider the submitted fact - that three defendant police officers in this case were found guilty of or pled guilty to fabricating criminal cases - as it relates to the knowledge of the police officers' two supervisors; the Court will not consider the submitted fact as relevant to the defendants' guilt or propensity for fabricating cases in this case.

Once a properly supported motion has been presented, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. See Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000).

Bewilderingly, plaintiffs introduce no facts that would give a context for the claims made in this case, in essence asking the Court to accept the facts alleged in the Amended Complaint to provide the context for those claims. The Court declines plaintiffs' implicit invitation to construct an unsupported factual background from the unsubstantiated facts alleged in the Amended Complaint. See Arroyo-Audifred v. Verizon Wireless, Inc., 527 F.3d 215 (1st Cir. 2008)(for the purposes of summary judgment, the court need only consider well-supported facts); Garcia Sanchez v. Roman Abreu, 270 F.Supp.2d 255, 258-59 (D.P.R. 2003)(stating that "The Court is confounded that plaintiffs would not find it imperative to submit their own statement of contested facts in accordance to the local rule when the burden is on them to prove a political discrimination claim"). Because this Court considers only those facts that are well supported by the record, and because

Civil No. 07-1844 (FAB)                                                    10

plaintiffs' counsel submitted only one fact properly for
consideration, the record upon which this Court must now decide the
Motion for Summary Judgment is a record filled with gaps.  The very
circumstances provoking the allegedly tortious, unconstitutional
behavior are glaringly absent from the current record; those facts
have not been submitted for consideration by plaintiffs at the
summary judgment stage.

### III. Factual Background

The alleged facts provoking this case date back to September
13, 2006.  On September 13, 2006, there was an outstanding search
warrant to search plaintiff Luis Cruz-Acevedo and his three-story
residence, including the basement.  The search warrant was issued
on September 13, 2006 by Judge Alfredo R. Velez-Lopez by means of
a sworn statement presented by police officer Victor Cortes-Caban,
one of the defendants in this case.  The search warrant was served
through the Mayaguez Drugs Division of the Puerto Rico Police
Department.  The search carried out at plaintiff Cruz-Acevedo's
residence was negative, that is, no drugs and/or weapons were
found.  As such, the outcome of the search was reported as
"negative."

Defendant Pedro Toledo-Davila was appointed Superintendent of
the Puerto Rico Police Department in January, 2005.  Toledo-Davila
enacted General Order 98-16, "Internal Rules and Procedures for
Processing and Serving Citations, Warrants for Arrest, Searches and

Seizures." General Order 98-16 provides instructions for agents and supervisors in accordance with constitutional principles concerning searches and seizures and establishes a protocol for how to safeguard the constitutional rights of citizens when obtaining and executing warrants.  In July, 2005, a year and two months prior to the alleged facts that gave rise to the present complaint, Toledo-Davila appointed defendant Francisco Carbo-Marty to the position of Auxiliary Superintendent of the Drugs, Narcotics, and Illegal Firearms Superintendence (a position with island-wide authority)(Docket No. 90 at 10).

On August 1, 2005, about three weeks after his appointment, and about thirteen months before the events giving rise to this case, defendant Carbo-Marty held a staff meeting in which he ordered all bureaus under his supervision to notify him about any police agent under his supervision who was cited for "repetitive conduct."[8]  Carbo-Marty's order was made pursuant to Special Order No. 90-5, an order issued in 1990 by the Police Department's Superintendent at that time.  Special Order No. 90-5 requires all supervisors, regardless of their rank in the chain of command, to alert the Superintendent of any agent conduct suggesting an agent's emotional disturbance or suggesting any problems warranting that

---

[8]  The Court, in reading the notes from this meeting and other attached exhibits, understands that Carbo-Marty intended to be notified about all civil rights violations or unethical behavior for which officers under his supervision were responsible.

agent's re-education or re-training.  Special Order 90-5 also requires the Dean of the Police Academy to prepare intensive courses in human relationships directed to those members of the Police Department whose conduct is cited as described above.

At the August 1, 2005 staff meeting, Carbo-Marty informed the directors of the bureaus under his supervision, the Drugs and Narcotics Bureau and the Vice Control and Illegal Firearms Bureau, that a training titled "Civil Rights and Repetitive Conduct" would be held at the Criminal Justice Academy in Gurabo, Puerto Rico. The Director of the Drugs and Narcotics Division, Commander Jose A. Morales-Vazquez, was present for that announcement.

The Civil Rights and Repetitive Conduct training session was held on October 22, 2005, eleven months prior to the events from which this case stems.  Police officers from the Mayaguez Drugs and Narcotics Division participated in that training, including defendants Muniz-Tirado and Ruperto-Torres.  Commander Jose Morales Vazquez informed Carbo-Marty that the agents who attended the training had complied with the directives issued pursuant to Special Order 90-5.

On March 7, 2006, six months prior to the incident provoking this case, defendant Muniz-Tirado, who was the Director of the Mayaguez Drugs and Narcotics Division at that time, informed Carbo-Marty of all agents who had been cited for civil rights or ethical violations, in response to Carbo-Marty's request for notification

of all agent violations. Carbo-Marty received notice of only one agent in the Mayaguez Drug Division who exhibited repetitive conduct: Luis E. Nieves-Gonzalez. Nieves-Gonzalez is not a defendant in this case. Carbo-Marty was also informed that, because of the repetitive conduct citation, agent Nieves-Gonzalez had taken a three day course on the subject of professional improvement.

On March 9, 2006, after Carbo-Marty received notification about which agents had been cited for civil rights violations, he requested leave from the Police Superintendent, defendant Toledo-Davila, to retrain the cited agents by sending them to intensive courses on the subject of Human Relationships and Civil Rights. Carbo-Marty informed Superintendent Toledo-Davila that agent Nieves-Gonzalez from the Mayaguez Drugs and Narcotics Division should be among those retrained. Toledo-Davila approved the retraining requests.

On March 28, 2006, Carbo-Marty held a staff meeting in which Fourth Amendment case law regarding searches and seizures was discussed. The discussion of the Fourth Amendment case law included the Georgia v. Randolph case, decided just six days earlier, on March 22, 2006, regarding the validity of warrantless searches. Carbo-Marty also discussed the Georgia v. Randolph case to explore proper forms of intervention with citizens and other Fourth Amendment search and seizure cases including Illinois v.

<u>Rodriguez</u>, <u>Minnesota v. Olsen</u>, and <u>United States v. Matlock</u>.
Defendant Muniz-Tirado, then the Director of the Mayaguez Drugs and
Narcotics Division, attended the March 28, 2006 meeting.  As of
September 13, 2006, Muniz-Tirado did not have an administrative
record.

On March 8, 2006 Carbo-Marty requested use of an amphitheater
at the Puerto Rico University College of Criminal Justice for a
training about "Civil Rights Violations" for all agents under his
supervision.  Carbo-Marty planned the training for May 6, 2006 with
the Director of the Puerto Rico Civil Rights Commission.  On April
10, 2005 the Dean of the Puerto Rico University College of Criminal
Justice approved Carbo-Marty's request for use of the amphitheater.

On July 15, 2008, defendant police officer Muniz-Tirado
pled guilty to Conspiracy Against Rights of Citizens and Conspiracy
to Distribute Narcotics in a criminal case before Puerto Rico
District Court Judge Daniel Dominguez.  That plea was accepted and
Muniz-Tirado was adjudged guilty on August 5, 2008.  Defendant
Cortes-Caban was found guilty of both Conspiracy Against Rights of
Citizens and Conspiracy to Distribute Narcotics on December 19,
2008.  Defendant Ruperto-Torres was found guilty of Conspiracy
Against Rights of Citizens on the same day.

**IV.  Summary Judgment Standard**

The Court's discretion to grant summary judgment is governed
by Rule 56 of the Federal Rules of Civil Procedure.  The Rule

states, in pertinent part, that the court may grant summary
judgment only if "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to judgment as
a matter of law." FED.R.CIV.P. 56(c); see also Santiago-Ramos v.
Centennial P.R. Wireless Corp., 217 F.3d 46, 52. (1st Cir. 2000).
The party moving for summary judgment bears the burden of showing
the absence of a genuine issue of material fact. See, e.g.,
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once a properly supported motion has been presented, the
opposing party has the burden of demonstrating that a trial-worthy
issue exists that would warrant the court's denial of the motion
for summary judgment. For issues where the opposing party bears
the ultimate burden of proof, that party cannot merely rely on the
absence of competent evidence, but must affirmatively point to
specific facts that demonstrate the existence of an authentic
dispute. See Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st
Cir. 2000).

In order for a factual controversy to prevent summary
judgment, the contested facts must be "material" and the dispute
must be "genuine." Material means that a contested fact has the
potential to change the outcome of the suit under governing law.
The issue is genuine when a reasonable jury could return a verdict

for the nonmoving party based on the evidence.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment.  Id. at 252.  It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion."  Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor."  Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore, however, "conclusory allegations, improbable inferences, and unsupported speculation."  Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

**V.   Analysis**

　　**A.   42 U.S.C. § 1983**

"Section 1983 affords redress against a person who, under color of state law, deprives another person of any federal constitutional or statutory right."  Omni Behavioral Health v. Miller, 285 F.3d 646, 650-51 (8th Cir. 2002); see also Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 621 (1st Cir. 2000).  It is well settled that in order for a claim to be cognizable under section 1983, a plaintiff must plead and prove three elements:  (1) that

Civil No. 07-1844 (FAB)                                          17

the defendants acted under color of state law; (2) that plaintiffs
were deprived of federally protected rights, privileges, or
immunities; and (3) that the defendants' alleged conduct was
causally connected to the plaintiff's deprivation.
Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 558 (1st Cir.
1989).  Hence, to succeed in a section 1983 action, plaintiffs must
prove that defendants actions were a cause in fact or a proximate
cause of their injury.  See Collins v. City Harker Heights, 503
U.S. 115 (1992).

    i.   **Fourteenth Amendment**

         The Due Process Clause of the Fourteenth Amendment
to the United States Constitution provides that certain substantive
rights - life, liberty, and property - "cannot be deprived except
pursuant to constitutionally adequate procedures." Cleveland Bd.
of Educ. v. Loudermill, 470 U.S. 532, 541 (1985).  To establish a
procedural due process claim, a plaintiff must show that he or she
had a liberty or property interest and, second, that defendants,
acting under color of state law, deprived him or her of that
interest without a constitutionally adequate process.  Logan v.
Zimmerman Brush Co., 455 U.S. 422, 428 (1982); PFZ Properties, Inc.
v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991).  To establish a
substantive due process claim, a plaintiff must show that a state
actor deprived him or her of a life, liberty, or property interest,
"and that he did so through conscience-shocking behavior." Estate

of Benner v. Wainwright, 548 F.3d 155, 162 (1st Cir. 2008) (citing

Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008)).

          Plaintiff Cruz-Acevedo alleges that his rights

pursuant to the Fourteenth Amendment were violated as a result of

an illegal search and seizure executed on the basis of a false

statement given by a police officer.  The Supreme Court has held

that "because the Fourth Amendment provides an explicit textual

source of constitutional protection against this sort of

physically-intrusive governmental conduct, that Amendment, not the

more generalized notion of 'substantive due process,' must be the

guide for analyzing these claims." Graham v. Conner, 490 U.S. 386,

395 (1989).  Following the Supreme Court's holing in Graham, the

First Circuit Court of Appeals has rejected alleged deprivations of

substantive due process rights under the Fourteenth Amendment based

either on excessive force or on malicious prosecution.  Estate of

Bennett v. Wainwright, 548 F.3d 155 (1st Cir. 2008) (dismissing a

substantive due process claim for deprivation of a life interest

because the claim was based on excessive force more appropriately

brought under the Fourth Amendment); Torres-Rivera v. O'Neill-

Cancel, 406 F.3d 43, 51-53 (1st Cir. 2005) (holding that an

excessive force claim is governed by the Fourth Amendment's

"objectively reasonable" standard rather than the Fourteenth

Amendment's "shock the conscience" standard); Roche v. John Hancock

Mutual Life Ins., 81 F.3d 249, 256 (1st Cir. 1996) (holding that

"[t]here is no substantive due process right under the Fourteenth Amendment to be free from malicious prosecution") (internal citation omitted).

The civil actions raised by plaintiff are appropriately controlled by the Fourth, not the Fourteenth, Amendment. Accordingly, plaintiffs' section 1983 claims brought against defendants for deprivations of due process pursuant to the Fourteenth Amendment are hereby **DISMISSED**.

ii. **Fourth Amendment**

Plaintiff Cruz-Acevedo claims that his Fourth Amendment rights were violated when police officers Muniz-Tirado, Carbo-Caban, and Ruperto-Torres knowingly executed a fraudulent warrant and used excessive force in the resulting search and seizure. Defendants, in their summary judgment motion, utterly fail to address any Fourth Amendment claim.[9] The Court therefore

---

[9]    Although defendants list the Fourth Amendment among the claims raised in the Amended Complaint, they oddly address only the First, Ninth, and Fourteenth Amendments in their Motion for Summary Judgment (Docket No. 90). Even odder, the defendants argue in their Fourteenth Amendment discussion that "the Fourth Amendment provides the explicit source of plaintiff's protection from unreasonable seizure of his person like malicious prosecution" yet do not proceed to discuss the Fourth Amendment they argue is the proper source of the plaintiff's claims. The Court also notes that defendants misconstrue plaintiffs' claim as one of malicious prosecution; the plaintiffs have alleged Fourth Amendment claims related to an illegal search and seizure. Plaintiffs alleged a Fourth Amendment violation for the execution of a fraudulent warrant under Franks v. Delaware, 438 U.S. 154 (1978) (holding that when there is a substantial preliminary showing that a false statement made knowingly and intentionally or with reckless disregard for the truth was included by affiant in a search warrant

assumes that there was a Fourth Amendment violation and proceeds to analyze supervisory liability accordingly.

### iii. Supervisory Liability

Under section 1983, a supervisory official may be held liable for his subordinates' behavior only if (1) his subordinates' behavior results in a constitutional violation; and (2) the official's action or inaction was affirmatively linked to that behavior such that "it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008) (quoting Lipsett v. Univ. of P.R., 864 F.2d 881, 902 (1st Cir. 1988)) (internal quotation marks omitted).

Supervisory liability may be found either where the supervisor directly participated in the unconstitutional conduct or where the supervisor's conduct amounts to "tacit authorization." See Camilo-Roble v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999). Plaintiffs must show that each individual defendant was involved personally in the deprivation of constitutional rights because no *respondeat superior* liability exists under section 1983. Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984). A supervisor need not have actual knowledge of the offending conduct to be liable; a supervisor's behavior may be deemed liable "by formulating a

---

and if the allegedly false statement led to the finding of probable cause, the Fourth Amendment requires a hearing) and its progeny and/or a claim under the Fourth Amendment for excessive force.

Civil No. 07-1844 (FAB)                                        21

policy, or engaging in a custom, that leads to the challenged
occurrence." Maldonado-Denis v. Castillo-Rodriquez, 23 F.3d 576,
582 (1st Cir. 1994). Thus, a supervisor may be liable "for the
foreseeable consequences of such conduct if he would have known of
it but for his deliberate indifference or wilful blindness, and if
he has the power and authority to alleviate it." Id.

          Plaintiffs assert three causes of action which all
fall under the umbrella of supervisory liability: (1) supervisors
Toledo-Davila and Carbo-Marty knew or should have known of the
propensity for violence and fabrication of cases against innocent
citizens of police officers Muniz-Tirado, Ruperto-Torres and
Cortes-Caban and failed to supervise them properly; (2) supervisors
Toledo-Davila and Carbo-Marty failed to take remedial action
against rogue police officers; and (3) supervisors Toledo-Davila
and Carbo-Marty failed to train and retrain the offending officers
properly. The Court addresses the allegations of supervisory
liability as to each defendant supervisor.

          **a)  Pedro Toledo-Davila**

          Defendant Toledo-Davila was, at times relevant
to this case, the Superintendent of the Puerto Rico Police
Department. Plaintiffs allege that defendant Toledo-Davila "knew
or should have known" of the "aggresive behavior and propensity for
violence and fabrication of cases against innocent citizens" of
defendant police officers Muniz-Tirado, Ruperto-Torres, and Cortes-

Caban.  (Docket No. 75 at 11).  Absolutely no facts exist in the record to support this claim.

The plaintiffs' scant response[10] to the summary judgment motion makes only one argument related to Toledo-Davila's liability as a supervisor: that Toledo-Davila should be held liable for his appointment of Carbo-Marty.[11]  Plaintiffs base this argument on their claim that Carbo-Marty's administrative record reveals extensive charges of misconduct, which in turn shows that Toledo-Davila was recklessly indifferent, and thus legally culpable under section 1983, in his appointment of Carbo-Marty.  Plaintiffs introduced nothing, however - not one fact or exhibit - to substantiate this claim.  Whether Superintendent Toledo-Davila's appointment of Carbo-Marty amounts to supervisory liability is a nonissue because the record put forward by plaintiffs is so astoundingly bare of any facts supporting plaintiffs' single conclusory argument.

Further, in its independent examination of the record, the Court finds no evidence from which a reasonable juror could draw any inference that defendant Toledo-Davila's actions or inactions were affirmatively linked to the violation of plaintiff

---

[10]   Plaintiffs' opposition to the summary judgment motion includes not even two full pages of legal analysis.  Within these pages, only one paragraph addresses Toledo-Davila's liability.

[11]   Toledo-Davila appointed defendant Carbo-Marty as the Auxiliary Superintendent of the Drugs, Narcotics, and Illegal Firearms Superintendence for the island.

Cruz-Acevedo's Fourth Amendment rights.   As defendants rightly
argue, one factor a Court may consider in determining supervisory
liability is whether the supervising official "was put on notice of
behavior which was likely to result in the violation of the
constitutional rights of citizens."   (Docket No. 90 at 12)(citing
Febus-Rodriguez v. Bentacourt-Lebron, 14 F.3d 87, 93 (1st Cir.
1994)).   Nothing on the record suggests that Toledo-Davila was ever
put on notice of any misconduct on the part of the three defendant
police officers in this case prior to the allegedly illegal search
on September 13, 2006.[12]

Neither does the record indicate that Toledo-
Davila could be found liable for failing to take remedial action or
to train or retrain.   To the contrary, Toledo-Davila appears to
have taken numerous steps to address both potential police
misconduct and to remedy police misconduct about which he was
aware.  Upon appointment, he enacted General Order 98-16, "Internal
Rules and Procedures for Processing and Serving Citations, Warrants
for Arrest, Searches and Seizures," which instructs police officers
and officials about citizen rights pursuant to the Fourth Amendment
during search warrant execution, searches and seizures.   When
Auxiliary Superintendent of the Drugs, Narcotics, and Illegal

---

[12]  The criminal case (07-346) cited by plaintiffs as evidence
that the defendant police officers (Cortes-Caban, Muniz-Tirado, and
Ruperto-Torrez) had a propensity to violate citizens' rights, was
tried (and verdicts/guilty pleas reached) in 2008, long after the
events giving rise to this case took place.

Civil No. 07-1844 (FAB)                                                    24

Firearms Superintendence Carbo-Marty asked for Toledo-Davila's approval to train errant police agents through intensive "Human Relationships and Civil Rights" courses, Toledo-Davila approved the requests.

        **b)**    **Francisco Carbo-Marty**

Defendant Carbo-Marty was, at times relevant to this case, the Commander of the Mayaguez Region of the Puerto Rico Police Department. Plaintiffs argue only that defendant Carbo-Marty is liable because he failed to ensure defendant police officer Cortes-Caban's attendance at one of the Civil Rights training sessions on October 22, 2005 provided especially for police officers with behavioral complaints on their records. According to the plaintiffs, defendant Cortes-Caban was the police officer who provided a false statement leading to the issuance of the illegal warrant used to search Cruz-Acevedo's home. Plaintiffs claim that Carbo-Marty's failure to ensure Cortes-Caban's attendance at the October 22, 2005 training amounts to reckless disregard resulting in the violation of Cruz-Acevedo's constitutional rights.

Plaintiffs' argument is entirely without merit. The record shows that Carbo-Marty ordered that he be notified about all agents found to have engaged in "repetitive conduct" and that Cortes-Caban was not among those agents. Plaintiff submits the guilty verdict of officer Cortes-Caban (along with officers

Muniz-Tirado and Ruperto-Torres) for a civil rights crime as evidence that Carbo-Marty did not properly train, retrain or take remedial action in his capacity as supervisor.[13]    This argument is nonsense.  The guilty verdict to which plaintiffs refer was issued in 2008, long after the occurrence of the September, 2006 event giving rise to this claim.  The fact that the rogue police officers in this case have been found guilty in another, later criminal case certainly indicates that there was a serious problem in the Mayaguez Drug and Vice Bureau; it does not indicate, however, that Carbo-Marty had any idea that these particular officers were involved in any untoward behavior or criminal action.

What the record does show, and what plaintiffs altogether fail to address or dispute, is that Carbo-Marty requested notification of problems with officer behavior related to civil rights, that he took measures to train all officers regarding civil rights and to retrain officers cited as problematic, and that he sought to keep those he supervised abreast of civil rights law by holding meetings in which relevant civil rights case law was discussed.

***

_____

[13]    The listed defendants were found or pled guilty to participation in a "Conspiracy Against Citizens"  in which they fabricated or planted evidence and/or executed fraudulent warrants resulting in illegal searches, seizures and detentions of innocent people.

As a way to sum up their position that
Toledo-Davila and Carbo-Marty cannot be found liable as
supervisors pursuant to section 1983, defendants argue that
"there was no possible way that former Superintendent Toledo-
Davila would delve himself into the files of thousands of agents"
and it was "unreasonable" for Carbo-Marty, "a very high echelon
supervisor," to "dig himself into the files of each and [sic]
every one of the over five hundred agents" he directed.  In
essence, defendants argue that Toledo-Davila and Carbo-Marty held
positions too high up the chain of command to be responsible for
individual cases of agent abuse.  The Court vehemently disagrees.
There are certainly instances in which supervisors wilfully turn
a blind eye to infractions, knowingly tolerate malignant
behaviors, or even tacitly encourage corruption by ignoring
indication of problems instead of investigating.[14]  The buck must
stop somewhere, but all too often supervisors shield themselves
from responsibility by claiming to be "too high up" or claiming
to have too much authority to be responsible for the perversions
of the lower ranks.  Such a defense is dishonest and allows those

---

[14]   A supervisor need not have actual knowledge of the
offending conduct to be liable; a supervisor's behavior may be
deemed liable "by formulating a policy, or engaging in a custom,
that leads to the challenged occurrence."  Maldonado-Denis v.
Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994).  Thus, a
supervisor may be liable "for the foreseeable consequences of such
conduct in he would have known of it but for his deliberate
indifference or wilful blindness, and if he has the power and
authority to alleviate it."  Id.

Civil No. 07-1844 (FAB)                                           27

with the most power the highest walls behind which to hide.  The
question is not one of status but one of responsibility.  Having
greater authority ought not to absolve leaders of responsibility
to end injustice; it ought to enable them to combat it.

It is clear from the criminal case cited by
plaintiffs that something went severely awry among the ranks of
the Puerto Rico Police Department in Mayaguez.  It is equally
clear from the pleadings submitted that plaintiffs put forth very
little effort to show why defendants Toledo-Davila or Carbo-Marty
should or could be held responsible for the kind of infractions
alleged.  Because plaintiffs raised no genuine issue of material
fact showing that supervisors Toledo-Davila or Carbo-Marty were
deliberately indifferent to the potential for constitutional
violations that likely occurred, the Court **GRANTS** the defendants'
Motion for Summary Judgment.  It is not solely substantive case
law that sets an often prohibitively high bar for showings of
supervisory liability;[15] it is procedural law and the standards
of the legal profession.  The law, alone, can do little to remedy
injustice - proper lawyering is an essential component.

**B.    Qualified Immunity**

Because the Court has resolved all federal claims on
other grounds in defendants' favor, it need not address
defendants' arguments regarding qualified immunity.

See <u>Maldonado v. Fontanes</u>, 568 F.3d 263 (1st Cir. 2009).

**C.    Supplemental Claims**

Defendants argue that the Court should dismiss the plaintiffs' supplemental claims because dismissal of supplemental claims is appropriate when all federal claims have been dismissed.  Because no federal claims against the moving defendants on which to ground jurisdiction remain in this case after dismissal of the section 1983 claims, plaintiffs' supplemental state law claims against movants are dismissed **WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c)(3).

**CONCLUSION**

Accordingly, Defendants' Motion for Summary Judgment (Docket No. 90) is hereby **GRANTED**.  Plaintiff Cruz-Acevedo's section 1983 claims are **DISMISSED WITH PREJUDICE** against defendants Toledo-Davila, Orozco-Sanchez and Carbo-Marty.  All supplemental claims of plaintiffs Cruz-Acevedo and Cruz-Perocier are **DISMISSED WITHOUT PREJUDICE** as against movants Toledo-Davila, Orozco-Sanchez and Carbo-Marty.[16]

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 30, 2009.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA

---

[16]  Defendants Ruperto-Torres, Muniz-Tirado, and Cortes-Caban remain in default.

UNITED STATES DISTRICT JUDGE